AO 91 (Rev. 11/11) Criminal Complaint

## UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Francisco HERRERA Flores | ) | |
| | ) | |
| | ) | **EP:26-M-01388-MAT** |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

**FILED**

April 06, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____**FM**_____
**DEPUTY**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 1, 2026_____ in the county of _____El Paso_____ in the _____Western_____ District of _____Texas_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. § 952 | Knowingly and intentionally, import into the United States, from the Republic of Mexico, approximately 28.32 kilograms (gross weight) of Cocaine a Schedule II Controlled Substance. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

Complaint sworn to telephonically on
_____April 06, 2026_____ at ____02:00 PM____ and signed
electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

_____
*Complainant's signature*

Sergio Contreras, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____04/06/2026_____

_____
*Judge's signature*

City and state: _____El Paso, Texas_____

Miguel A. Torres U.S. Magistrate Judge
*Printed name and title*

**Affidavit**

On April 1, 2026, at approximately 0229 hours, Francisco HERRERA Flores applied for admission into the United States at the vehicle lane number 8 of the Paso Del Norte Port of Entry El Paso, Texas, which is within the Western District of Texas.

HERRERA was the driver and only occupant of a white Hyundai Sonata bearing New Mexico plates BPKH98. HERRERA declared himself a United States citizen and presented a New Mexico driver license bearing his name and photograph to Customs Border Protection Officer (CBPO) Ivy O. Peralta. CBPO Peralta asked HERRERA if he had anything to declare and HERRERA stated "no." CBPO Peralta asked HERRERA to where he was traveling to. HERRERA stated he was going to his work. CBPO Peralta asked HERRERA where he worked, and HERRERA stated he worked in the construction business as a framer. CBPO Peralta asked HERRERA who the vehicle belonged to, and HERRERA stated it was his vehicle. CBPO Peralta asked HERRERA if anyone besides him used his vehicle, and HERRERA stated he was the only person that used his vehicle. CBPO Peralta asked HERRERA if he had done any repairs or modifications to his vehicle lately, and HERREA stated "no." CBPO Peralta checked the crossing on the vehicle and noticed the inbound and outbound traffic did not consist with him going to work. CBPO Peralta noticed HERRERA would enter the United States very early in the morning and depart the United States into Mexico in approximately two to three hours later raising suspicions because HERRERA stated he was going to work. CBPO Peralta decided to refer HERRERA and his vehicle to secondary for further inspection.

In Secondary, CBPO Juan M. Garcia received a negative secondary Customs declaration from HERRERA. CBPO Garcias asked HERRERA where he came from and where he was traveling to. HERRERA stated he was coming from his house in Ciudad Juarez and was going to work. CBPO Garcia asked HERRERA what he did for work. HERRERA stated that he worked in the construction business as a framer. CBPO Garcia asked HERRERA what time he went in to work. HERRERA stated that he started at 0800 am. CBPO Garcia asked HERRERA who the vehicle belonged to, and HERRERA stated that it was his vehicle. CBPO Garcia asked HERRERA if he was bringing anything for someone else or if he had any narcotics or ammunitions in the vehicle, and HERRERA stated "no." CBPO Garcia noticed during the secondary inspection, HERRERA became nervous by fidgeting with his hands. CBPO Garcia also noticed that HERRERA clothing, loose sweatpants, clean white tennis shoes and a T-shirt, did not pertain to a framing / construction worker. CBPO Garcia also noticed that HERRERA did not have any tools or change of clothing in the vehicle. CBPO Garcia gave instructions and asked HERRERA to drive his vehicle through the Z-Portal Xray Portal.

CBPO Fitzgerald reviewed the Xray scans and noticed several anomalies in rocker panels of the vehicle and notified the officers.

CBP Canine Enforcement Officer (CEO) Arnold Torres was asked to assist with his canine partner and administer a canine sniff on HERRERA's vehicle. At approximately 0245 hours CEO Torres notified the CBPOs that his canine partner had alerted to the trained odor for narcotics in the driver's side front and rear rocker panel.

CBPOs escorted HERRERA to a secure cell and drove the vehicle to a secure area. Further inspection of the vehicle revealed non-factory compartments in the driver and passenger side rocker panels. The back tires had to be removed to be able to open the compartments and several silver colored paper wrapped bundles were discovered. A total of 25 bundles were extracted from the two non-factory compartments. A randomly selected bundle was cut open, and a white powdery substance was extracted, which field tested positive for Cocaine. The approximately weight of the 25 bundles was 28.32 kilograms.

Homeland Security Investigation (HSI) Task Force Officer (TFO) Sergio Contreras, and HSI Special Agent (SA) Abraham Aguirre arrived at the Port of Entry and identified themselves to HERERRA.  HERRERA was read the Statements Notice of Rights Miranda Warnings in the Spanish language by HSI TFO Contreras and witness by HSI SA Aguirre. At that time, HERRERA stated he understood his rights and decided to speak with the officer / agent without an attorney present.

HERRERA was asked who the vehicle belonged to, and HERRERA stated that it was his vehicle. HERRERA was asked beside him, who else used his vehicle, and HERRERA stated he was the only one that uses his vehicle. HERRERA was asked if he had done any repairs or modifications to his vehicle, and HERRERA stated "No." HERRERA was asked where he was traveling to. HERRERA stated he was going to his work. HERRERA was asked where he worked. HERRERA stated he worked with a male by the name of Jose Castaneda in the construction business as a framer. HERRERA interrupted and stated that he remembered that he had the vehicle repair and repainted a week before because of a car accident. HERRERA was asked if he was going to change his clothing before he arrived to work, and HERRERA stated the following, "no this is what I used while I worked". HERRERA was asked what his hours of work were, and HERRERA stated he would start at 06:00 am and would get out of work at approximately 3:00 to 4:00 pm. every day. HERRERA was asked if he was at work during those hours who would drive his vehicle to back to Mexico two to three hours after he made entry into the United States. HERRERA stated, "I don't know, I park my car in downtown and my boss picks me up and take me to the job site." HERRERA was asked to provide the cell phone number of his boss, Jose Castaneda, to verify his employment and HERRERA stated he did not know it. HERRERA was asked how he had it saved in his cell phone, and HERRERA stated, "I don't have it saved." HERRERA was asked how long he had been working for Jose Castaneda, and HERRERA stated "four (4) years." HERRERA was asked how he would communicate with his boss and HERRERA stated, "I don't know." HERRERA was asked if anyone else had keys to his car, and HERRERA stated "no." HERRERA was told of his inbound and departures times and was asked if it was him that drove the vehicle inbound and outbound, how he explain how he could be at work all day when his departures to Mexico were two or three hours after he made entry into the United States. HERRERA stated, "I don't know". HERRERA's cell phone was inspected with border search authority and HERRERA's consent. Several pictures of HERRERA were found wearing expensive clothing, Gucci Jacket and Gucci shorts, and a picture of a Range Rover SUV was also found on HERRERA's cell phone. HERRERA was asked who the Range Rover belonged to and, HERRERA stated it was his wife's vehicle. Agents showed HERRERA several pictures of him on his cell phone where he was on vacation wearing a Gucci jacket, Gucci shorts and a Gucci purse. HERRERA was asked how much he had paid for the purse. HERRERA stated he had paid six or seven hundred dollars for the purse. HERRERA was asked how much money he made working at the construction company, and

HERRERA stated he would make eight hundred dollars ($800.00) a week. HERRERA was asked what his wife did for a living. HERRERA stated she was a housewife. HERRERA was asked how he could afford all those expensive items in his eight hundred dollars a week salary. HERRERA stated, "Juarez is cheap." HERRERA was asked again if he had loan his vehicle to anyone and HERRERA again stated "no." HERRERA was asked how would drugs would happen to be loaded in his vehicle if he did not let anyone use his vehicle. HERRERA stated, "I don't know". HERRERA was told that it was believed that he was not being truthful because his clothing did not match a construction worker and his living style did not match someone that was making eight hundred dollars a week. HERRERA stated, I don't know."

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included every fact known to me concerning this incident.